## Barriger v. Louisville Gas & Electric Company.

(Decided June 2, 1922.)

Appeal from Jefferson Circuit Court
(Chancery Branch, First Division).

1. Gas—Supply to Private Consumers—Public Service Corporations. —A rule by which a public service corporation required only about 10 per cent of its patrons to secure their accounts by per-

sonal security or cash deposits for service it was required to render under its franchise contract with the city, was discriminatory and its enforcement was properly enjoined at the instance of a citizen who was required to make a deposit as a condition to service.

2.  Gas—Supply to Private Consumers—Deposit in Order to Secure Service.—The plaintiff in such action who was granted all the relief to which he was severally entitled and also all the relief to which he was entitled in common with other citizens who had made like deposits, has no further interest in the action and can not secure a reversal of the judgment denying him the right to sue for all others who had made deposits with the company in order to secure service from it, regardless of whether the court erred or not in such denial, since his substantial rights were not prejudiced thereby.

R. RUTHENBERG and JOSEPH SOLINGER for appellant.

ALEX P. HUMPHREY and M. J. O'DOHERTY for appellee.

OPINION OF THE COURT BY JUDGE CLARKE—Affirming on both appeal and cross appeal.

Appellee owns and operates the gas and electric light plants in Louisville, under a franchise granted by city ordinance on March 29th, 1913, and has a monopoly of the business. Appellant and many others, but not nearly all citizens, were required by the company to make deposits ranging in amounts from $5.00 to $100.00 before gas or electricity would be furnished them.

Appellant instituted this action to recover the $5.00 deposit required of him, and to enjoin the company from refusing to serve him without such deposit; he also sought to sue for like relief for and on behalf of about 3,000 other citizens of whom deposits were required, and to have the cause referred to the master to ascertain the amounts due each of them and for an accounting. The city intervened, asking the same injunctive relief as plaintiff.

The defendant, after objecting by motion to strike and special demurrer to plaintiff's suing for others than himself, for answer set out the rule under which the deposits were required, denying that it was discriminatory, although admitting that less than ten per cent of its patrons had made such deposits.

The chancellor, holding upon final submission that the rule under which the deposits were made by plaintiff and others was discriminatory as enforced by defendant,

gave him judgment for the amount of his deposit with interest and costs, and enjoined the defendant from enforcing the rule against plaintiff unless enforced against all citizens alike, but refusing to permit him to sue for others similarly situated as himself.

On behalf of the city, in accordance with its prayer, the defendant was enjoined from enforcing the rule requiring deposits as a condition to service against any citizen unless enforced against all. The plaintiff Barriger appeals from only so much of the judgment as refused him the right to sue for all and for an accounting on their behalf, and the company cross appeals from so much of the judgment as holds the rule discriminatory and grants plaintiff any relief. The city has not appealed.

Since it is conceded that neither the plaintiff nor any of those for whom he sought to sue was entitled to any relief unless the rule under which the deposits were required by the company was discriminatory, we will consider it first. As set forth in defendant's answer, it is as follows:

" 'All persons applying for gas or electricity will be required either to deposit an amount equal to the estimated cost of forty-four (44) days' service, or to give the written guarantee of someone known to the company that their bills will be paid. Where deposits are made a receipt for the amount will be given, and interest will be paid thereon at the rate of 6% per annum.

" 'In the case of consumers who have previously used the company's service and have paid their bills regularly, the company has arranged with a responsible party to guarantee all such bills.

" 'The company will accept as guarantor any customer who has used its service in an amount as great as the consumer proposes to use it, and who has habitually paid his bills; or any resident of Jefferson county of known financial responsibility and integrity, whether a customer of the company or not.' "

Under this rule as enforced, according to the proof, less than 10% of the company's patrons were required either to make deposits or to give a written guaranty that their bills would be paid, and more than 90% of its patrons were never even informed of the existence of such a rule, but their accounts were guaranteed for them without their knowledge or consent by an employe of the

defendant, Mr. Edward I. Redding, for which service the company arranged and paid him a commission upon the amount of the bills guaranteed by him.

The net result of this rule was, therefore, that about 10% of the citizens of Louisville who were patrons of the company which furnished them gas and electricity under a franchise from the city, were required by a rule of the company to furnish a cash deposit or written guaranty as security for their accounts, while the remaining 90% of its patrons by the same rule were not required to furnish security of any kind for their accounts, and all were charged the same rates for services rendered. Stated otherwise, for the service rendered from 10% of its patrons the company received full contract rates plus an enforced loan, while from the rest of its patrons it received only the contract rates less the commission paid to Redding for guaranteeing their payment. If such an arrangement does not give to the 90% preferential treatment and is not therefore discriminatory against the less favored 10% of its patrons, we do not know how it could be accomplished.

Since counsel for the company concede that under its franchise contract with the city it must treat all of its patrons alike and that the rule, which is its only justification for requiring the deposits of plaintiff and others, is not enforcible if discriminatory, it would seem worse than a waste of words to further discuss the cross appeal.

It is not only the universal rule of appellate practice that a judgment will not be reversed because of error unless the appellant's substantial rights have been prejudiced thereby, but it is expressly so provided by our code.

The judgment from which the appellant is appealing affords him every relief to which he was severally entitled and every relief for which he asked in which he had a common or joint right with the others for whom he sought to sue. We are therefore unable to see how he was prejudiced or by what right he can complain of the judgment even if it be conceded that the court, having jurisdiction to grant the injunctive relief due the plaintiff and those for whom he sought to sue, erred in not granting to all such parties in the one action all the relief to which they were entitled, including an accounting, under a well known principle of equity for the avoidance of a multiplicity of actions.

It is clear that the rights of plaintiff and those for whom he sought to sue to recover the amounts deposited by them with the company, were several and not joint, and that they could not have joined as plaintiffs in a single action for the recovery of such amounts alone. Union Light, Heat and Power Co. v. Mulligan, 177 Ky. 670, 197 S. W. 1081; Batman v. Louisville Gas & Electric Company, 187 Ky. 659, 220 S. W. 318.

Since the court not only granted to the plaintiff all the relief to which he was individually entitled, but also granted to him all of the relief to which he was entitled in common with those for whom he sought to sue, we think it is clear that his interest in the suit is at an end, and that the judgment ought not to be reversed at his instance whatever be the merit of his contention on behalf of others with reference to a question of practice in which he has no further interest of any kind, since the rights of the unnamed parties for whom he sought to sue can not be affected in any way by a judgment which refused to permit the plaintiff to sue in their behalf in an action to which they were not otherwise parties.

Wherefore the judgment is affirmed on both the original and the cross appeals.