## Commonwealth, For Use and Benefit of Bouteiller et al. v. Ray et al.

(Decided Dec. 9, 1938.)

SAVAGE & SAVAGE for appellants.

J. VERSER CONNER, HENRY J. TILFORD, HUBERT MEREDITH, Attorney General, JESSE K. LEWIS and A. E. FUNK, Assistant Attorneys General, for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

This is a most unique action. It was filed in the Franklin circuit court by Joseph Bouteiller, for himself and others similarly situated, against Charles T. Ray, Master Commissioner of the Jefferson circuit court; his surety, National Surety Corporation, and E. E. Shannon, Auditor of Public Accounts for the Commonwealth of Kentucky. It is clearly not maintainable to obtain the relief sought as, and in the court wherein it was filed, and which was the conclusion of the learned trial judge of the Franklin circuit court in dismissing the petition from whence this appeal is prosecuted.

The action was filed on July 26, 1938, by plaintiff, Bouteiller, against the defendants supra, and in his petition—in addition to alleging the official character of the defendants—he averred that in a certain equity case pending in the Jefferson circuit court, No. 235,442, the defendant, Ray, as such commissioner, was directed by the court to sell certain real estate in Jefferson county in satisfaction of a lien held by Bouteiller, who was plaintiff in that action; that the sale was made on January 18, 1934, but it failed to bring the amount of plaintiffs' lien; that in rendering the total cost bill for making that sale, the defendant, Ray, taxed $17 more

than the statutory fees for the services rendered, and in excess of those allowed by section 1740 of our present statutes, being Baldwin's 1936 Revision of Carroll's Kentucky Statutes; that between that date and the date of filing this action Ray had made, as such Master Commissioner, 2,669 other sales of real estate in which plaintiffs averred illegal and excessive fees and costs were taxed—although later allowed by the court—and that the excessive charge of $17 paid by him (plaintiff), together with similar unlawful fees paid by the other 2,668 litigants (or purchasers), amounted to approximately $71,000, and that Ray, together with his predecessors in office, had collected and delivered to the State Auditor of Public Accounts a total amount of such illegal charges of $112,603.51, which plaintiff averred constituted a trust fund in the hands of the Auditor for the benefit of those who so wrongfully contributed thereto.

Plaintiff moved that he be permitted to sue for himself and for the benefit of the vast number of other unfortunates who were caught in the same trap, as he claims to have been. He asked that the matter be referred to the Master Commissioner of the Franklin circuit court to ascertain the exact number of those who had so contributed to the unlawfully collected fund in the hands of the auditor, the amounts thereof, and that the latter be directed to pay that fund, or a sufficiency thereof, in discharge of the total amount of such erroneous collection so found and reported by the commissioner to him (commissioner of the Franklin circuit court) and that he be directed to distribute it according to the facts found in his report. Defendants filed a special demurrer to the petition based upon a number of grounds not necessary to separately enumerate. The court sustained it, and plaintiff, declining to plead further, his petition was dismissed, followed by this appeal.

Some of the grounds for the special demurrer were and are: (a) That the action was nothing more than an effort on the part of plaintiff to collect from Ray an alleged excess item of cost amounting to $17, and that his remedy—if he had one—was exclusively that provided by section 1758 of our statutes supra, and which is a summary procedure in the court wherein the alleged illegal cost was taxed and collected, which in this case is the Jefferson circuit court; (b) that plaintiff possessed no right to maintain this independent action in a sepa-

rate co-ordinate court to that of the Jefferson circuit court for the reason stated in ground (a); and the still further one that his claim amounted to only $17, of which the Franklin circuit court, nor any other circuit court (except by specially provided summary proceedings), had jurisdiction; (c) that plaintiff possessed no right to maintain this alleged representative action for the benefit of himself and others similarly situated; (d) that plaintiff, according to his own showing, had voluntarily paid the costs and was not entitled to recover it back in this character of proceedings; (e) that when the Jefferson circuit court confirmed the order of sales made by the defendant, Ray, its Master Commissioner—which embodied the taxation of his costs—without exception filed thereto by an interested party (including plaintiff in this case), the judgment became final and not subject to attack in a collateral proceeding as is this one, and (f) that the fund sought to be reached was not a trust fund in which plaintiff and others similarly situated were beneficiaries, but that it was only a fund for the benefit of the Master Commissioner of the Jefferson circuit court, from which deficits in the earnings of that office for any year might be made up so as to enable the office to pay its running expenses and salaries for the chief officer and his necessary deputies, pursuant to the provisions of section 1761-1 of our statutes supra. We have concluded that each enumerated ground is meritorious; but perhaps (e) and (f) relate more to the merits of the case than to grounds supporting the special demurrer sustained by the court, and for that reason they will not be discussed or elaborated upon further than to say we regard them as sound.

Before adverting to a discussion of any of the grounds urged in support of the special demurrer, we deem it pertinent to briefly state the substance of the statutes under and by which the alleged trust fund is created. They are sections 1761-1 et seq., relating exclusively to salaries of commissioners and deputy commissioners of circuit courts in counties having a population of 200,000 or more. They fix the maximum salaries of the officer and his deputies and require him to keep an account of the fees earned by his office and to make annual reports to the auditor of the amount collected and the amount disbursed for expenses and salaries. If there is a surplus he is required to remit it to the auditor, who holds it in trust for the particular office of

master commissioner of the circuit court of the county to which the account applies. If there is a shortage, or deficit, in collections for any year whereby the allowed salaries and expenses exceed such collection for that year, then the commissioner, on application to his court, may obtain an order to the auditor—the holder of that trust fund—to supply the shortage or deficit for that year, provided he has sufficient funds in his hands for that purpose. There is, however, nothing in the statute authorizing the auditor to pay any part of the fund to anyone who may have contributed to it by paying costs taxed by the commissioner, although illegal items may have been taxed in the cost bills so paid. Having said this much concerning the substance of the statute, we will now take up seriatim the grounds supra, for the special demurrer.

We have given one reason in support of ground (a) in stating it, but another one is, that under the provisions of section 63 of our Civil Code of Practice an action "Against a public officer [a master commissioner being one] for an act done by him in virtue or under color of his office, or for a neglect of official duty" (Subsection 2 of the section), "Must be brought in the county where the cause of action, or some part thereof, arose." This action arose exclusively in Jefferson county, and the facts are essentially different from those appearing in the case of Shackelford v. Phillips, 112 Ky. 563, 66 S. W. 419, 68 S. W. 441, relied on by counsel for plaintiff to sustain their position that the remedy provided by section 1758 of our statutes supra is not exclusive. There are many differentiating facts between the Shackelford Case and this one. The contested item involved in that case was a fee bill made out by the clerk of this court, yet collectible as a part of the cost of the trial court after mandate filed; nor was the cost taxed in a court of original jurisdiction to which section 1758 is particularly applicable. Moreover, the Court of Appeals, which took jurisdiction to determine the alleged wrongful cost item in that case, had already acquired appellate jurisdiction upon the filing of the appeal, and after all, it was only a question as to which of the courts should grant the particular relief sought by the litigant.

With reference to ground (b) plaintiffs' counsel appear to admit its applicability to this case, except for their contention that the fund in the hands of the auditor was and is a trust fund for the benefit of their client,

but which we have held without elaboration to be incorrect, and which has the effect to make the rule with reference to the venue of the action as contended for by defendants' counsel, exclusively applicable. The trust fund theory advanced by plaintiffs' counsel is attempted to be supported by a number of cases which they cite relating to the collection of illegal taxes, which this court appears to have held constituted a trust fund in the hands of the collecting officers, and which could be recovered in an action by a single tax payer for himself and other tax payers who had paid or contributed to the illegal tax fund.

Such was the holding of this court in the cases of Commonwealth v. Scott, 112 Ky. 252, 65 S. W. 596, 23 Ky. Law Rep. 1488, 55 L. R. A. 597, and Whaley v. Commonwealth, 110 Ky. 154, 61 S. W. 35, 23 Ky. Law Rep. 1292, and others of like tenor; but since the fund involved in this case was not produced by the contributors paying it as taxes—but only as costs which had been adjudged by the court to be collectible—the relationship of the payers to the fund is essentially different and their rights and remedies to obtain relief are also different.

When illegal and invalid taxes are paid, section 162 of our statutes permits, under certain conditions, their later recovery from the officer who made the wrongful collection or from the fund produced by the wrongfully collected items. There is, however, no such provision with reference to recoupments of illegally taxed costs and, therefore, they may not be recovered through the process of compelling the auditor to issue his warrant therefor after the collections are turned over to him as a trust fund for a particular designated purpose, as is prescribed by section 1761-1 supra of our statutes. Moreover, while we have held that an officer suing for statutory fees might maintain the action for himself and other officers similarly situated, Duke v. Boyd County, 225 Ky. 112, 7 S. W. (2d) 839, yet in other circumstances not involving statutory fees, but rights growing out of transactions of an entirely different nature, one complaining party may not maintain an action for himself and others similarly situated (which is the case here). Garfein v. Stiglitz, 260 Ky. 430, 86 S. W. (2d) 155; Barriger v. Louisville Gas & Electric Company, 196 Ky. 268, 244 S. W. 690, 31 A. L. R. 1428; Swiss Oil Corp. v. Shanks, Auditor, 208 Ky. 64, 270 S. W. 478.

We are clearly of the opinion that the facts of this case bring it within the rule as approved in the last cited cases, and which confines Bouteiller's rights to proceed under section 1758, supra, in the court having jurisdiction of the subject matter to correct only the wrong done to him, and not those sustained by others similarly circumstanced. This determination also disposes of ground (c).

In disposing of ground (d) it should be remembered that the contested and alleged costs involved in this case were not only voluntarily paid by plaintiff and those whom he seeks to represent, but the payments were made after the court had adjudged that they should be paid, and which was done in its order confirming the master commissioner's reports of sale made by him pursuant to judgments of the Jefferson circuit court. All parties interested in the property sold, as well as the reported bidder, had the right, upon the filing of such reports containing the taxation of costs, to except thereto. If they failed to do so, and suffered and permitted the sales reports to be confirmed, it, so far as the taxed cost was concerned, became an adjudication of the correctness of the cost, and which would have to be reached by procedures and processes applicable to the correction of judgments, since relief against such adjudications may not be obtained in an independent collateral action instituted in the same or an independent court. See Dawson v. Litsey, 10 Bush 408; Wise v. Wolf, 120 Ky. 263, 85 S. W. 1191, 27 Ky. Law Rep. 610; Ramey v. Francis, Day & Co., 169 Ky. 469, 184 S. W. 380; Caudle v. Luttrell, 183 Ky. 551, 209 S. W. 497; and First State Bank v. Thacker's Adm'x, 215 Ky. 186, 284 S. W. 1020.

We deem it unnecessary to pursue the discussion further, since under our determinations already made it is doubtful if plaintiff has the right to maintain a procedure of any kind anywhere at this stage of the proceedings to obtain the relief he seeks; but if he has such right, it is clearly confined to procedures he might inaugurate in the Jefferson circuit court, and not in the Franklin circuit court.

Wherefore, for the reasons stated, the judgment is affirmed.

Whole Court sitting.